**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ernesto Zavaleta,<br><br>            Plaintiff,<br><br>v.<br><br>OTB Acquisition LLC,<br><br>           Defendant. | No. CV-19-04729-PHX-JAT<br><br>**ORDER** |

Before the Court is Defendant's Motion for Summary Judgment (Doc. 27).[1] Plaintiff responded (Doc. 28)[2] and Defendant replied (Doc. 30). For the following reasons, Defendant's Motion for Summary Judgment is granted.

**I.    BACKGROUND**

The following facts are either undisputed or recounted in the light most favorable to Plaintiff, the non-movant. *Ellison v. Robertson*, 357 F.3d 1072, 1075–76 (9th Cir. 2004).

Plaintiff worked as a Culinary Manager ("CM") at Defendant's Arrowhead

---

[1] Defendant filed an Amended Motion for Summary Judgment (Doc. 31) which corrects "formatting and scrivener's errors" and to "replaces Plaintiff's deposition transcript excerpts" due to formatting issues. (Doc. 31 at 1–2). As this amendment makes no substantive changes to the Motion for Summary Judgment, the Court will cite the original motion.

[2] Plaintiff also submitted a Separate Statement of Facts in Support of Response (Doc. 29). Per the Court's October 15, 2019 Order, "parties may not file separate statements of facts or controverting statements of facts, and instead must include all facts in the motion, response or reply itself." (Doc. 17 at 4). Because of this, the Court will not consider Plaintiff's separate statement of facts in its analysis of Defendant's Motion for Summary Judgment. The Court notes, however, that the separate statement of facts is duplicative of the facts in Plaintiff's response. Thus, even if considered by the Court, Plaintiff's separate statement of facts would not alter the Court's analysis.

restaurant in Peoria, Arizona (the "Restaurant") from July 30, 2012 to December 1, 2018. (Doc. 27 at 5). Plaintiff reported to the Restaurant's General Manager, D.M., beginning in April 2013. (*Id.*). Plaintiff's responsibilities as CM included managing the Restaurant's kitchen staff and handling aspects of the Restaurant's "operations, maintenance, appearance, guest relations, management team and staff in the absence of the General Manager." (*Id.*). Plaintiff was paid a bi-weekly salary. (*Id.* at 6).

While employed by Defendant, Plaintiff undertook certain handyman jobs for the Restaurant. (*Id.*). Plaintiff asserts that he undertook these handyman jobs at the request of his General Manager, D.M. (Doc. 28 at 6). Plaintiff sometimes undertook these handyman jobs during the hours he would normally spend performing his CM duties, and sometimes undertook these handyman jobs outside of his CM hours or at home. (*Id.* at 4–5). If Plaintiff was working on a handyman job and a staff member approached him with a question because of his CM title, Plaintiff would address the Staff members' question and not "turn [them] away." (*Id.* at 5; Doc. 27 at 8). Even while performing handyman jobs, Plaintiff remained ultimately responsible for his CM duties. (Doc. 27 at 8).

At the completion of each handyman job, Plaintiff noted to his General Manager that he should be compensated for the handyman work he completed, but Plaintiff's General Manager did not take these requests seriously and disregarded them. (*Id.* at 7, Doc. 27 at 7). Plaintiff also spoke to Defendant's Area Director, C.R., at least three times about being compensated for the handyman jobs, who said he would "find a way to compensate [Plaintiff]." (Doc. 27 at 9). Additionally, Plaintiff spoke with Defendant's Regional Vice President, B.M., about being compensated for the handyman jobs who said he would "find a way to pay [Plaintiff]." (*Id.*). Plaintiff testified that his General Manager became upset when Plaintiff told him about these conversations and "the relation [sic] turned bad." (*Id.* (alteration in original) (quoting Doc. 31-3 at 33)).

On November 17, 2018, a Restaurant server reported a complaint of sexual harassment against Plaintiff. (*Id.* at 10). On November 21, 2018, another Restaurant server reported a separate complaint of sexual harassment against Plaintiff. (*Id.*). Defendant

investigated these complaints and subsequently terminated Plaintiff's employment effective December 1, 2018. (*Id.*). Defendant alleges that Plaintiff was discharged for "unsatisfactory performance as a leader," but Plaintiff disputes this claim. (*Id.*).

On July 16, 2019, Plaintiff filed the underlying complaint alleging failure to pay the minimum wage in violation of the Fair Labor Standards Act ("FLSA") and the Arizona Minimum Wage Act ("AMWA"), failure to pay overtime in violation of the FLSA and Arizona's wage statute, and retaliatory discharge under the FLSA and the AMWA. (Doc. 1). On October 28, 2020, Defendant filed the instant Motion for Summary Judgment (Doc. 27) to which Plaintiff responded (Doc. 28) and Defendant replied (Doc. 30).

## II.   LEGAL STANDARD

Summary judgment in favor of a party is appropriate when that party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Stated conversely, a party "can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in its favor." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (per curiam).

The movant must first establish that there is no genuine dispute of material fact and that, based on the undisputed material facts, the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate the existence of any dispute of material fact. *Id.* at 323–24. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963)). There is a genuine issue of material fact if the disputed issue of fact "could reasonably be resolved in favor of either party." *Ellison*, 357 F.3d at 1075. Material facts are those "facts that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "construe all facts in the light most favorable to the non-moving party." *Ellison*, 357 F.3d at 1075–76

(citation omitted). However, the nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact that would defeat the motion for summary judgment. *Anderson*, 477 U.S. at 247–48.

## III. ANALYSIS

Plaintiff asserts claims for failure to pay minimum wage and overtime, unpaid wages, and retaliatory discharge. (Doc. 1 at 13–15). Defendant moves for summary judgment on each claim. (Doc. 27). The Court will address each set of claims in turn.

### a. Minimum Wage and Overtime Claims

Plaintiff contends that he was not paid the appropriate minimum wage and for overtime by Defendant for the handyman work he performed while employed as CM. (Doc. 1 at 11–14). Defendant responds that Plaintiff was paid an appropriate wage under the law and that Plaintiff was exempt from the minimum wage and overtime regulations of the FLSA. (Doc. 27 at 11–17).[3] As an initial matter, based upon Plaintiff's stated salary and hours worked, Plaintiff was paid more than the minimum wage required under Arizona law for his work as a CM. (*See* Doc. 31-3 at 15–17); A.R.S. § 23-363.[4]

Defendant asserts that Plaintiff was exempt from the minimum wage and overtime regulations of the FLSA. (Doc. 27 at 11–17). Under the FLSA, employers must pay the appropriate minimum wage and overtime for an employee's hours worked unless an exemption applies. 29 U.S.C. §§ 206(a)(1), 207(a)(1), 213(a)(1). An employee is exempt when "employed in a bona fide executive, administrative, or professional capacity." *Id.* § 213(a)(1). Employed in a bona fide executive capacity means any employee:

> (1) Compensated on a salary basis . . . at a rate of not less than $684 per week . . . ; (2) Whose primary duty is management of the enterprise in which the

---

[3] "Arizona does not have an overtime law; consequently, the only overtime protections for Arizonan employees come from the FLSA." *Reyes v. LaFarga*, No. CV-11-1998-PHX-SMM, 2013 WL 12098794, at *1 (D. Ariz. Nov. 20, 2013).
[4] Arizona's minimum wage was $10.50 in 2018, when Plaintiff was discharged. A.R.S. § 23-363. Plaintiff testified that he normally worked fifty-five hours in a week but would sometimes work as many as sixty hours. (Doc. 31-3 at 15). In Arizona, an employee working sixty hours a week would have to earn at least $630 per week, or $1,260 every two weeks. Plaintiff's salary as CM was at least $2,118 every two weeks while employed by Defendant. (Doc. 31-3 at 16).

- 4 -

> employee is employed or of a customarily recognized department or subdivision thereof; (3) Who customarily and regularly directs the work of two or more other employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). Plaintiff met the requirements of the executive exemption while employed as a CM.

### 1. Salary

An employee is paid on a salary basis "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality of the work performed." 29 C.F.R. § 541.602(a). Based upon Plaintiff's stated salary and hours worked, Plaintiff was a salaried employee who was paid more than $684 per week. (*See* Doc. 31-3 at 15–17, 35–36, 54–55). Thus, the salary requirement for the executive exemption is met. *See* 29 C.F.R. § 541.100(a)(1)

### 2. Primary Duty is Management

"The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Determination of an employee's primary duty is a fact specific inquiry with "the major emphasis on the character of the employee's job as a whole." *Id.* Factors a court should consider when determining the primary duty of an employee include "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; [and] the employee's relative freedom from direct supervision" among other things. *Id.* The primary duty of "management" includes activities such as "interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; . . . disciplining employees; planning the work; determining the techniques to be used; [and] apportioning the work among the employees," among other things. *Id.* § 541.102. The duties associated with the role of CM constitute

management duties. (*See* Doc. 27 at 5).

"The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." *Id.* § 541.700. Time spent performing exempt work is not the only measure of primary duty, however, as "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id.*; *see Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1113–14 (9th Cir. 2001) (holding that employees qualified as exempt even though the employees spent ninety percent of their time on nonexempt tasks due to other relevant factors); *see also Cameron v. Avalon Mobility Inc.*, No. CV-15-00963-PHX-JAT, 2017 WL 3593715, at *5 (D. Ariz. Aug. 21, 2017) (finding that an employee could still qualify as exempt under the FLSA even though he spent a majority of his time at work performing nonexempt tasks).

Here, Plaintiff stated that he still operated as a CM while performing handyman jobs around the Restaurant. (Doc. 31-3 at 18–20). Sometimes, Plaintiff would even stop performing handyman jobs to answer questions for staff members in his role as CM. (*Id.* at 21–22). Further, undisputed evidence presented by Defendant shows that Plaintiff never spent a majority of his working hours on handyman jobs but spent most of his working time on CM duties. (*See e.g.*, *Id.* at 15, 20, 50, 61–62, 66–67). While Plaintiff argues that he would sometimes "direct [an] employee to the manager on duty" rather than answer their questions, Plaintiff also asserts that he was "a dedicated employee and therefore would not turn away employees who would ask him questions." (Doc. 28 at 5).

The evidence also shows that the relative importance of Plaintiff's CM duties compared to his handyman jobs supports the finding that Plaintiff's primary job was management. (*See* Docs. 31-3 at 3–5, 9; 31-4 at 3); *Baldwin*, 266 F.3d at 115 (holding that relative importance of managerial duties supported finding plaintiff's primary job was management even though plaintiff regularly performed manual labor). Further, the

undisputed evidence shows that Plaintiff regularly exercised discretionary powers relatively free from supervision as CM. (*See* Doc. 31-3 at 5, 9). Thus, Plaintiff has failed to present evidence to genuinely dispute that Plaintiff's primary duty was management.

### 3. Customarily and Regularly Directs Work of Other Employees

"The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. The undisputed evidence shows that Plaintiff was responsible for managing the "whole [kitchen] staff" and regularly directed these employees. (Doc. 31-3 at 4–5). As CM, it was Plaintiff's duty to direct these employees during his working hours, even if he was performing handyman jobs. (Doc. 31-4 at 4). Thus, there is no genuine dispute that Plaintiff customarily and regularly directed the work of other employees. *See Baldwin*, 266 F.3d at 1117 (holding that this factor weighed in favor of finding that an employee was an exempt manager even though supervision and direction was not constant).

### 4. Has the Authority to Hire or Fire

The undisputed evidence further shows that Plaintiff had the authority to hire and discipline employees. (*See* Docs. 31-3 at 3, 31-4 at 3). Thus, there is no genuine dispute that Plaintiff's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were given particular weight.

### 5. Conclusion Regarding Minimum Wage and Overtime Claims

Defendant presented evidence to show Plaintiff was paid an appropriate wage under the law and that Plaintiff was exempt from the minimum wage and overtime regulations of the FLSA. Plaintiff has not shown that there is evidence to create a genuine factual dispute on these issues, so Defendant is entitled to summary judgment on these claims.

### b. Unpaid Wage Claims

Plaintiff argues that he is owed "unpaid wages for tasks performed of a handyman nature" under the Arizona wage statute. (Docs. 28 at 2, 1 at 13–14). Defendant responds that Plaintiff is not entitled to damages under the Arizona wage statute because the alleged wages were not due at the time of Plaintiff's discharge and because Plaintiff did not have

a reasonable expectation to be paid. (Doc. 30 at 4–7). The Court finds that Plaintiff has not made the necessary showing to survive summary judgment on this claim.

Under the Arizona wage statute, "[w]hen an employee is discharged from the service of an employer, he shall be paid wages due him within seven working days or the end of the next regular pay period, whichever is sooner." A.R.S. § 23-353. The statute defines wages as "nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation." *Id.* § 23-350.

Under Arizona law, for wages to be "due" at the time of discharge, they must be ascertainable at the time of discharge. *See Abrams v. Horizon Corp.*, 669 P.2d 51, 55 n.2 (Ariz. 1983) (finding that certain wages were not due upon discharge under the Arizona wage statute because they were not ascertainable at the time of discharge); *see also Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 874 P.2d 982, 985 (Ariz. Ct. App. 1994) (holding that treble damages should not be awarded under the Arizona wage statute where the amount of wages owed was not ascertainable at the time of discharge).

Here, Defendant presented evidence showing that the wages allegedly owed for handyman work were not ascertainable at the time of Plaintiff's discharge and, in fact, are still not ascertainable. This evidence includes Plaintiff's inability to state the amount of wages he is owed, (*see* Doc. 31-3 at 52–62, 68 (Plaintiff declining to state the value of the wages he was owed and asserting that he could not determine how much he was owed for his handyman work at the Restaurant because each handyman job's value varied based on its "danger" and "complexity"), Plaintiff's admission that he never had a contract or agreement to be paid by Defendant for the handyman jobs, (*id.* at 28–29), and Plaintiff's statements that he believed he may be compensated non-monetarily, (*id.* at 29–30 (Plaintiff stating that he believed he would either be paid with money or additional days off), 31–32 (Plaintiff stating that he believed he would be compensated through a promotion)). Plaintiff, on the other hand, has presented no evidence and made no claims of an

ascertainable amount of wages owed. (*See* Docs. 1 at 16–17, 28). Based upon the evidence presented by the parties, there is no genuine dispute that the amount of wages sought by Plaintiff was not ascertainable at the time of his discharge.

Even if the amount allegedly owed to Plaintiff is ascertainable, wages only fall under the Arizona wage statute if the employee had "a reasonable expectation to be paid" those wages at the time of discharge. A.R.S. § 23-350; *see Orfaly v. Tucson Symphony Soc'y*, 99 P.3d 1030, 1033 (Ariz. Ct. App. 2004). Employees' reasonable expectations of being paid can be defined by contract. *Orfaly*, 99 P.3d at 1034. Here, it is uncontested that there was no contract between the parties for handyman work. (Doc. 31-3 at 28–29).

In the absence of an express contract, a court can find an implied contract between the parties based upon their past dealings. *See Acevedo v. Phoenix Opportunities Industrialization Ctr.*, 551 P.2d 1322, 1323-24 (Ariz. Ct. App. 1976). Here, Plaintiff has presented no evidence of past dealings, like prior payments or company policies, that would lead the Court to find an implied contract. (*See* Doc. 28); *Acevedo*, 551 P.2d at 1323–24 (finding an implied contract because defendants established policy gave plaintiff a reasonable expectation of payment).

To the contrary, Plaintiff admits that he was never paid for performing any handyman work. (Doc. 1 at 10; *see* Doc. 31-3 at 54–55). Further, Plaintiff admits that he asked for compensation for the handyman jobs only after each job was completed, not before. (Docs. 28 at 7, 31-3 at 29–30). Plaintiff further contends that he did not expect to be compensated for the handyman jobs with wages but believed he may receive additional days off from his CM job or a promotion as payment. (Doc. 31-3 at 29–31). Thus, there can be no genuine dispute that Plaintiff did not have a reasonable expectation to be paid wages for the handyman jobs. *See Orfaly*, 264, 99 P.3d at 1034 (finding no payment required under the Arizona wage statute when "neither the record nor the law supports any contention that [the party] reasonably expected to be paid."); *see also Heimer v. Price, Kong & Co.*, No. 1 CA-CV 07-0643, 2008 WL 5413368, at *3 (Ariz. Ct. App. Dec. 30, 2008) (unpublished) (holding that plaintiff did not have a reasonable expectation to be paid

a bonus because defendant did not have an enforceable policy or practice of making such payments); *Schade v. Diethrich*, 760 P.2d 1050, 1062 (Ariz. 1988) (holding wages were owed under the Arizona wage statute because the promise to pay was made *before* plaintiff performed work and said promise to pay induced plaintiff to perform work).

While Plaintiff claims that he "believed [he] would be compensated beyond [his CM] pay for the[] handyman tasks," (Doc. 29-1 at 3), that claim is not supported by evidence and is contradicted by Plaintiff's own deposition testimony. Further, Plaintiff admits that his requests for payment for the handyman jobs were disregarded by his General Manager, (Doc. 31-3 at 29–30), assuaged with unclear promises of possible promotion by his Area Director, (*id.* at 30–32), and met with a onetime comment that Defendant would "find a way to pay [Plaintiff]," (*id.* at 32–33). Plaintiff never asserts that he discussed receiving wages for his handyman work, that he was promised payment before any handyman job, or that a specific monetary reward for handyman work was ever mentioned by Defendant's representatives. (*See* Doc. 28). Consequently, Plaintiff's unsupported assertions of the expectation of wages beyond his CM pay are insufficient to create a genuine issue of material fact. *See Anderson*, 477 U.S. at 247–48. Because Plaintiff has not shown that there is a genuine issue of material fact, Defendant is entitled to summary judgment on these claims.

### c. Retaliatory Discharge

Plaintiff alleges that he was discharged in retaliation for asserting rights under the AMWA and the FLSA. (Doc. 1 at 15). Defendant argues that there were nonretaliatory reasons for Plaintiff's discharge. (Doc. 27 at 17–20). The Court will examine the claims under the AMWA and the FLSA in turn.

#### 1. Retaliation Under the AMWA

Under the AMWA, "[n]o employer or other person shall . . . subject any person to retaliation for asserting any claim or right under [the AMWA]." A.R.S. § 23-364(B). "Taking adverse action against a person within ninety days of a person's engaging in the foregoing activities shall raise a presumption that such action was retaliation, which may

be rebutted by clear and convincing evidence that such action was taken for other permissible reasons." *Id.*

Here, Plaintiff argues that he asserted his rights under the AMWA when he requested that he be paid for the handyman jobs he performed. (Doc. 28 at 7). Plaintiff further alleges he was discharged within ninety days of making such a request. (*See* Doc. 1 at 9–11). Thus, the burden shifts to Defendant to rebut the presumption that its discharge of Plaintiff was retaliatory, and Defendant meets this burden.

Defendant argues that Plaintiff was discharged because he was the subject of multiple sexual harassment complaints. (Doc. 27 at 20). To support this argument, Defendant presented clear and convincing evidence consisting of a declaration and numerous emails. (Doc 31-2 at 3–5, 8–18). Plaintiff does not even address this argument, the sexual harassment complaints, or Defendant's evidence in his response. (*See* Doc. 28). While Plaintiff stated at his deposition that he believed he was discharged because he asked to be compensated for the handyman jobs, not because of the sexual harassment complaints, he cited no evidence to support such an argument. (Doc. 28-1 at 96–98). Further, Plaintiff, in the same deposition, gave a list of other reasons he believes Defendant discharged him, and none of these reasons were related to the handyman jobs. (*Id.* at 22–27).[5] Such unsupported and varying assertions cannot create a genuine dispute of fact. *See Anderson*, 477 U.S. at 247–48; *State v. Mecham*, 844 P.2d 641, 645 (Ariz. Ct. App. 1992).

Because Defendant presented clear and convincing evidence that Plaintiff was discharged for nonretaliatory reasons, and Plaintiff did not present any evidence to dispute those nonretaliatory reasons, Defendant has satisfied its burden in rebutting the presumption of retaliation. Thus, Defendant is entitled to summary judgment on this claim. *See, e.g.*, *Hoeveler v. Arizona Assocs. in Dermatology & Cosmetic Surgery LLC*, No. 1 CA-CV 20-0120, 2021 WL 56402, at *3 (Ariz. Ct. App. Jan. 7, 2021) (unpublished) (affirming trial court's grant of summary judgment on a retaliation claim because defendant

---

[5] Plaintiff argues that he was discharged because he "was never good enough for [his General Manager]," because he "was a big part of th[e] restaurant," because he "had a very good relation [sic] with pretty much the whole staff," beause he "had the ability to fix problems or situations [with the staff]," and because he is "Latino." (Doc. 28-1 at 22–27).

presented evidence to rebut the presumption of retaliation and plaintiff presented no evidence to counter defendant's); *Harris v. GoDaddy.Com, Inc.*, No. 1 CA-CV 14-0151, 2015 WL 276698, at *2 (Ariz. Ct. App. Jan. 22, 2015) (unpublished) (same).[6]

### 2. Retaliation Under the FLSA

"Retaliation claims under FLSA are governed by the three-step burden shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Tolano v. El Rio Bakery*, No. CV-18-00125-TUC-RM, 2019 WL 6464748, *4 (D. Ariz. Dec. 2, 2019) (citing *Forsyth v. City of Buena Park*, 691 F. App'x. 363 (9th Cir. 2017)). "Under this framework, after the plaintiff makes a prima facie case of [retaliation], the burden shifts to the defendant to provide a legitimate non[retaliatory] reason for the adverse employment action." *Spata v. Smith's Food & Drug Centers, Inc.*, 253 F. App'x 648, 649 (9th Cir. 2007) (citing *McDonnell,* 411 U.S. at 802–04). To satisfy this burden, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by [retaliatory] animus." *Campbell-Thomson v. Cox Commc'ns*, No. CV-08-1656-PHX-GMS, 2010 WL 1814844, at *5 (D. Ariz. May 5, 2010) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981)). "If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the proffered reason is a mere pretext." *Id.* Where a plaintiff relies on indirect evidence to show that the defendant's stated reason is not the actual reason, "[s]uch evidence ... must be 'specific' and 'substantial' in order to create a triable issue. *Lewis v. Smith*, 255 F. Supp. 2d 1054, 1059 (D. Ariz. 2003) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)).

Here, even if Plaintiff made a prima facie case of retaliation, Defendant provided a nonretaliatory reason for Plaintiff's discharge—multiple sexual harassment complaints against Plaintiff. (*See* Doc. 27 at 20). Defendant supported this reason for Plaintiff's discharge with a declaration and numerous emails. (Doc 31-2 at 3–5, 8–18). Thus, Defendant satisfied its burden, and the burden shifted back to Plaintiff to prove this reason

---

[6] Because unpublished Arizona Court of Appeals cases do not form binding precedent, the Court cites these cases merely as persuasive authority.

was pretext. *See Campbell-Thomson*, 2010 WL 1814844, at *5. Plaintiff provided virtually no evidence to show that Defendant's reason was pretextual, other than unsupported and varying assertions. *See supra* Section III.c.1.

Defendant has satisfied its burden in rebutting Plaintiff's prima facie case of retaliation, and Plaintiff has not met his burden to show that Defendant's reasons are pretextual. Thus, Defendant is entitled to summary judgment on this claim. *See Spata*, 253 F. App'x at 649 (affirming grant of summary judgment for defendant because plaintiff did not present sufficient evidence to genuinely dispute defendant's reason for discharge as pretextual); *Behan v. Lolo's Inc.*, No. CV-17-02095-PHX-JJT, 2019 WL 1382462, at *6 (D. Ariz. Mar. 27, 2019), *appeal dismissed*, No. 19-15874, 2019 WL 3384891 (9th Cir. June 12, 2019) (granting summary judgment for defendant because plaintiff did not present adequate evidence to genuinely dispute defendant's stated reason for discharging plaintiff as pretextual).

## IV. CONCLUSION

It is undisputed that Plaintiff performed handyman jobs for Defendant without compensation outside of his salary as CM. Under the legal claims brought by Plaintiff, however, Plaintiff has failed to present evidence to raise a genuine dispute of fact that he was entitled to compensation; therefore, Defendant is entitled to summary judgment as a matter of law. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 27) is **GRANTED**, Plaintiff shall take nothing, and the Clerk of the court shall enter judgment accordingly.

Dated this 3rd day of March, 2021.

James A. Teilborg
Senior United States District Judge